# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*County of Summit, Ohio, et al. v. Purdue
Pharma L.P., et al.*

Case No. 18-op-45090

**MDL No. 2804**
**Case No. 17-md-2804**
**Judge Dan Aaron Polster**

### OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION REGARDING THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT BY DEFENDANTS CVS INDIANA, L.L.C., CVS RX SERVICES, INC., RITE AID OF MARYLAND, INC., WALGREEN CO., WALGREEN EASTERN CO., <u>AND WALMART INC.</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.      Plaintiffs State No Claims Against the Pharmacy Defendants as Pharmacies ................. 2

II.     Plaintiffs Cannot Sue for Derivative, Indirect Economic Losses ..................................... 2

III.    Plaintiffs' Statutory Public Nuisance Claim Fails (Count 5) ............................................ 4

IV.    Plaintiffs Fail to State a Claim Under Ohio Rev. Code § 2307.60 (Count 9).................... 7

V.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 10)................................. 10

VI.   Plaintiffs' Civil Conspiracy Claim Is Especially Deficient as to the Pharmacy Defendants (Count 11) ......................................................................................................... 15

CONCLUSION.......................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

*A.A. v. Otesgo Local Sch. Bd. of Educ.*,
No. 3:15-cv-1747, 2016 WL 7387261 (N.D. Ohio Dec. 21, 2016) ..........................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................1, 6, 7, 14

*Ashley County v. Pfizer, Inc.*,
552 F.3d 659 (8th Cir. 2009) ...............................................................................12

*Ashtabula River Corp. Grp. II v. Conrail, Inc.*,
549 F. Supp. 2d 981 (N.D. Ohio 2008)..................................................................4

*Barnhart v. Thomas*,
540 U.S. 20 (2003)...............................................................................................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................1, 7, 14

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ...............................................................................6

*Brown v. Scioto Cty. Bd. of Comm'rs*,
622 N.E.2d 1153 (Ohio Ct. App. 1993)..................................................................7

*Buddenberg v. Weisdack*,
No. 2018-1209 (Ohio Oct. 24, 2018).....................................................................8

*Chemical Bank v. Kausmeyer*, No. 4:15-cv-1850,
2016 WL 7178662 (N.D. Ohio Dec. 9, 2016) .........................................................9

*City & Cty. of San Francisco v. Philip Morris, Inc.*,
957 F. Supp. 1130 (N.D. Cal. 1997) ......................................................................12

*City of Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002) ...........................................................................3, 4, 7

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
719 F.2d 322 (9th Cir. 1983) ...............................................................................4

*City of Miami v. Bank of America Corp.*,
800 F.3d 1262 (11th Cir. 2015),
*vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017).........................13

*City of Toledo v. Sherwin-Williams Co.*,
No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007) ...........................5

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,
   835 N.E.2d 701 (Ohio 2005) ..................................................................................................4

*Coyne v. Am. Tobacco Co.*,
   183 F.3d 488 (6th Cir. 1999) ............................................................................................2, 3

*Cuyahoga Heights Local School District v. Palazzo*,
   69 N.E.3d 162 (Ohio Ct. App. 2016) ....................................................................................9

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
   560 N.E.2d 206 (Ohio 1990) ................................................................................................3

*Gonzalez v. Spofford*,
   No. 85231, 2005 WL 1541016 (Ohio Ct. App. June 30, 2005).............................................9

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*,
   758 F.3d 757 (6th Cir. 2014) ........................................................................................11, 14

*Holmes v. Secs. Investor Protection Corp.*,
   503 U.S. 258 (1992)...............................................................................................................3

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   684 F. Supp. 2d 942 (N.D. Ohio 2009).................................................................................13

*Indep. Ins. Agents of Ohio, Inc. v. Fabe*,
   587 N.E.2d 814 (Ohio 1992) ................................................................................................4

*Jacobson v. Kaforey*,
   75 N.E.3d 203 (Ohio 2016) ..............................................................................................8, 9

*Jane v. Patterson*,
   No. 1:16-cv-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017) .....................................8, 9

*Johnson v. Microsoft Corp.*,
   834 N.E.2d 791 (Ohio 2005) ....................................................................................11, 13, 14

*Leen v. Wright Med. Tech., Inc.*,
   No. 3:15-cv-125, 2015 WL 5545064 (S.D. Ohio Sept. 18, 2015).........................................11

*Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*,
   91 F. Supp. 3d 940 (S.D. Ohio 2015) .................................................................................13

*Moore v. Texaco, Inc.*,
   244 F.3d 1229 (10th Cir. 2001) ..........................................................................................13

*Ohio Edison Co. v. Direct Energy Bus., LLC*,
   No. 5:17-cv-746, 2017 WL 3174347 (N.D. Ohio July 26, 2017).....................................13, 14

iii

TABLE OF AUTHORITIES
(continued)

Page(s)

*Ortiz v. Kazimer*,
    No. 1:11-cv-01521, 2015 WL 1400539 (N.D. Ohio Mar. 26, 2015),
    *aff'd sub nom. Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848 (6th Cir. 2016)............8

*Slorp v. Lerner, Sampson & Rothfuss*,
    587 F. App'x 249 (6th Cir. 2014) ..................................................................8

*State ex rel. Cleveland Elec. Illuminating Co. v. City of Euclid*,
    159 N.E.2d 756 (Ohio 1959) ........................................................................10

*State ex rel. Ohio Presbyterian Ret. Servs., Inc. v. Indus. Comm'n of Ohio*,
    86 N.E.3d 294 (Ohio 2017) ..........................................................................5

*Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*,
    No. 16AP-742, 2017 WL 1407304 (Ohio Ct. App. Apr. 20, 2017) .......................12

*United States v. Shabani*,
    513 U.S. 10 (1994)....................................................................................9

*White v. Smith & Wesson*,
    97 F. Supp. 2d 816 (N.D. Ohio 2000)......................................................12, 13, 14

**STATUTES**

Ohio Rev. Code § 1.47..................................................................................6

Ohio Rev. Code § 505.87...............................................................................5

Ohio Rev. Code § 715.261.............................................................................5

Ohio Rev. Code § 2921.13.............................................................................8

Ohio Rev. Code § 2307.50............................................................................10

Ohio Rev. Code § 2307.60.....................................................................7, 8, 9, 10

Ohio Rev. Code § 2307.61.......................................................................9, 10

Ohio Rev. Code § 2307.71.......................................................................4, 11

Ohio Rev. Code § 2307.72.......................................................................5, 11

Ohio Rev. Code § 2307.73............................................................................11

Ohio Rev. Code § 2307.74............................................................................11

Ohio Rev. Code § 2307.75............................................................................11

Ohio Rev. Code § 2307.76............................................................................11

Ohio Rev. Code § 2307.77............................................................................11

iv

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Ohio Rev. Code § 2307.78................................................................................................11

Ohio Rev. Code § 2307.79................................................................................................11

Ohio Rev. Code § 2307.80................................................................................................11

Ohio Rev. Code § 3707.01..................................................................................................5

Ohio Rev. Code § 3767.24..................................................................................................5

Ohio Rev. Code § 4729.35..............................................................................................5, 6

Ohio Rev. Code § 4781.56..................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)....................................................................................................14

**INTRODUCTION**

Plaintiffs' suit calls for a boundless expansion of tort doctrine that Ohio law does not countenance.  A host of well-established legal doctrines—standing, proximate cause, economic loss, free public services, and many others—embody the common law's ancient judgment against any recovery for alleged social ills on a theory as sweeping and indirect as Plaintiffs'.

The Report and Recommendation (R&R) missed this forest for the trees.  It addressed each claim and defense seriatim, without recognizing that the entire thrust of tort law is to allow recovery only for plaintiffs who have suffered *direct* harms—and even when directness is shown, only for certain kinds of losses, and only by certain classes of plaintiffs.

The R&R committed a further overriding error when it invoked and applied the "no set of facts" pleading standard that the Supreme Court overruled in *Iqbal* and *Twombly* (R&R 3) to repeatedly credit conclusory and implausible allegations.  And it compounded this error by attributing allegations against the unrelated Manufacturing Defendants to the Pharmacy Defendants and ignoring the paucity of plausible allegations against the pharmacies generally and each Pharmacy Defendant individually.

Plaintiffs have not stated sufficient allegations "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and many of their legal theories are wrong as a matter of Ohio law.  Their Complaint against the Pharmacy Defendants should be dismissed for the reasons stated below as well as in the Pharmacy Defendants' earlier briefs and the Major Distributors' earlier briefs and separate objections today.[1]

---

[1] The Pharmacy Defendants incorporate the Major Distributors' relevant arguments by reference.  Further, the Pharmacy Defendants object to the undue page limits that constrain their ability to object to the R&R.  *See* ECF No. 1041.

1

## ARGUMENT

**I.      Plaintiffs State No Claims Against the Pharmacy Defendants as Pharmacies.**

The Complaint classifies the Pharmacy Defendants as "Distributor Defendants," Compl. ¶ 127, and purports to state claims against them as wholesale distributors, but it also includes vague allegations about the Pharmacy Defendants' role in filling prescriptions as dispensing pharmacies. *E.g., id*. ¶¶ 611-26.  The Pharmacy Defendants accordingly asked the Court to remove all doubt by dismissing any claims against them as dispensing pharmacies, and Plaintiffs responded by disavowing any dispensing-related claims.  Pls.' Br. 75 n.47 (ECF No. 654).  The R&R did not address this request but instead offered the off-point observation, in a footnote about causation, that "[p]harmacies, the ultimate dispenser of opioids, are arguably a step closer to the injured parties than the other Defendants."  R&R 81 n.51.  The Court should clarify that Plaintiffs chose to sue the Pharmacy Defendants only as distributors, not dispensers, and dismiss any claims that purport to be directed at dispensing activities.

**II.      Plaintiffs Cannot Sue for Derivative, Indirect Economic Losses.**

Plaintiffs admit that their asserted harms are "far-reaching" and include "public health, social services, and criminal justice consequences."  Compl. ¶ 20.  And those harms are entirely derivative:  Plaintiffs do not claim that they ever purchased opioids from any of the Pharmacy Defendants.  Any number of well-established doctrines preclude political subdivisions from recovering the economic losses they incur responding to harms to third parties.

First and foremost is Article III standing.  Like the elected public officials who "alleged injury on behalf of the State of Ohio on the theory that the state had expended sums of money to pay for the health care of Ohio citizens due to tobacco-attributable illnesses," *Coyne v. Am. Tobacco Co*., 183 F.3d 488, 491 (6th Cir. 1999), Plaintiffs "'stand[] at too remote a distance to recover'" because their "injury is not direct or particularized to Plaintiffs, as they seek damages

2

not for any personal injuries, but rather for the injury to others," *id*. at 495 (quoting *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)).  Although the R&R suggested that the directness requirement applies only to lawsuits by "taxpayers," R&R 101, the Sixth Circuit has categorically stated that *any* "alleged injury must be 'direct' to . . . support standing." *Coyne*, 183 F.3d at 494.

Even assuming Plaintiffs have standing, however, the remoteness of their claimed injuries would still prevent recovery.  Without "some direct relation between the injury asserted and the injurious conduct alleged," they cannot establish proximate cause.  *Holmes*, 503 U.S. at 268.  The learned intermediary doctrine, too, overrides any possible duty or causation because physicians, not distributors, know their patients' medical needs and are intervening actors best suited to address any over-prescription of opioid medications.  Pharmacy Defs.' Br. 9-10 (ECF No. 497).  The R&R relied primarily on *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), to find that Plaintiffs' allegations suffice, but that decision leaned heavily on relaxed notice-pleading standards that do not apply here, was an outlier at the time it was decided, and has since been rejected by the General Assembly.  Pharmacy Defs.' Br. 16 n.4.  The R&R also erred in importing a causation analysis from the RICO context to the claims against the Pharmacy Defendants, which have not been accused of racketeering activities, fraud, or marketing opioid medications to doctors.

Moreover, the indirect and purely economic injuries Plaintiffs allege are precisely the type of claims that the economic loss doctrine forecloses.  *Id.* at 10-11.  A plaintiff may not recover in tort for economic losses that do not arise from tangible harm to property or person.  *See Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990).  Contrary to the R&R's assertion, this rule is not limited to "cases between parties in a contractual

3

relationship," as shown by the fact that the case cited in the R&R did not involve parties in contractual privity.  *See* R&R 83 (citing *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701 (Ohio 2005)).  Since Plaintiffs are alleging not a breach of contract but "simply a tort wherein only economic loss allegedly occurred," their suit "is barred by the economic loss doctrine."  *Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 988 (N.D. Ohio 2008).  Finally, even if economic losses were recoverable by different parties, Plaintiffs themselves cannot do so because a government entity may not sue for costs incurred in providing public services as a result of the defendant's allegedly tortious conduct.  *See City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (Kennedy, J.).[2]

### III.  Plaintiffs' Statutory Public Nuisance Claim Fails (Count 5).

1.     The Court should dismiss Plaintiffs' statutory nuisance claim because the Ohio Product Liability Act ("OPLA") abrogates it.  The statute defines a "product liability claim" to include "any public nuisance claim or cause of action at common law in which it is alleged that the . . . distribution . . . of a product unreasonably interferes with a right common to the general public."  Ohio Rev. Code § 2307.71(A)(13).  The "grammatical 'rule of the last antecedent'" instructs that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also Indep. Ins. Agents of Ohio, Inc. v. Fabe*, 587 N.E.2d 814, 817 (Ohio 1992) (applying rule in Ohio before General Assembly amended OPLA to cover nuisance actions).  Here, that rule means the qualifying phrase ("at common law") should be read to limit "cause of action" but not "any public nuisance claim."  This reading comports with the General Assembly's broad intent to abrogate

---

[2] Whatever effect RICO-specific considerations may have on the free public services doctrine in that statutory context (R&R 18) is irrelevant to the Pharmacy Defendants, against whom Plaintiffs have not stated a RICO claim.  And the *Beretta* decision (R&R 19) is not sound authority for the reasons described *supra* p. 3.

nuisance actions when it amended the statute in 2005.  *See City of Toledo v. Sherwin-Williams Co.*, No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007) (discussing history of amendment of OPLA to broadly cover nuisance claims).

> **2.**     Even if it is not abrogated, Plaintiffs' statutory nuisance claim should be dismissed, at the very least, to the extent that Plaintiffs seek "recovery of abatement costs."  Compl. ¶ 995. The Ohio statute authorizing public nuisance suits for violation of the drug distribution laws provides an exclusive remedy—an injunction:  "The attorney general, the prosecuting attorney of [a] county …, or the state board of pharmacy may maintain an action … *to enjoin* [the defendant] from engaging in such violation."  Ohio Rev. Code § 4729.35 (emphasis added).  The statute does not authorize any other relief, such as recovery of abatement costs—in conspicuous contrast to other Ohio laws expressly authorizing such relief for statutory public nuisances.[3]

The R&R stated that "[n]othing in [§ 4729.35] can reasonably be construed as addressing or expressly limiting the categories of relief available for the nuisance."  R&R 68.  But the clear import of the provision's statement that the designated classes of plaintiff "may maintain an action … to enjoin [the defendant] from engaging in such violation" is that such an injunction is the only available remedy.   That conclusion follows from the commonsense canon that "the express inclusion of one thing implies the exclusion of the other."  *State ex rel. Ohio Presbyterian Ret. Servs., Inc. v. Indus. Comm'n of Ohio*, 86 N.E.3d 294, 300 (Ohio 2017).  The R&R also suggested

---

[3] *See, e.g.*, Ohio Rev. Code § 3767.24 ("[T]he court may direct the sheriff to execute the order of abatement at the cost and expense of the defendant."); *id.* § 505.87 (authorizing town to collect costs of removing debris constituting a nuisance from land); *id.* § 3707.01 (permitting city health board to assess abatement costs against property deemed a public nuisance); *id.* § 715.261 ("A municipal corporation or its agent … may collect the total cost of abatement activities"); *id.* § 2307.72(D)(1) (authorizing "relief in the form of the abatement of a nuisance, civil penalties, cleanup costs, cost recovery"); *id.* § 4781.56(A) ("The park operator shall pay any costs for the removal.").

that more general public nuisance statutes that provide for abatement as a remedy could apply in the drug distribution context despite the limitation to injunctive relief of § 4729.35, the more specific statute governing that type of nuisance.  R&R 68.  But that reasoning would render the limitation in the specific statute ineffective and meaningless, contrary to the rule that "[t]he entire statute is intended to be effective."  Ohio Rev. Code § 1.47(B).  It would also render meaningless the General Assembly's unmistakable decision to abrogate common law nuisance actions by affording all the same relief via a different cause of action.

3.     Moreover, the statutory nuisance claim should be dismissed as a whole because all Plaintiffs offer to support it, and all the R&R credited, are "[c]onclusory allegations or legal conclusions masquerading as factual allegations."  *Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 519 (6th Cir. 2008).  Plaintiffs' claim under Ohio Rev. Code § 4729.35 rests entirely on their recitation of certain state and federal legal requirements relating to controlled substances and a conclusory assertion that the Defendants violated them.  *See, e.g*., Compl. ¶ 504 (simply reciting statutory and regulatory requirements and stating, "Defendants violated their obligations").  But mere statements of conclusions "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action" is inadequate.  *Bishop*, 520 F.3d at 519.

Plaintiffs' allegations of statutory and regulatory violations are especially insufficient as to the Pharmacy Defendants.  The R&R suggested that they suffice simply because the Complaint "references numerous fines and settlements involving the Pharmacies."  R&R 72. But the referenced settlement agreements entered by some (but not all) of the Pharmacy Defendants related to activities in *other jurisdictions*.  Plaintiffs do not allege that those activities elsewhere caused them harm, nor do those extra-jurisdictional activities give rise to a reasonable inference that the

6

Pharmacy Defendants violated the law *in or affecting Summit County*.  A "sheer possibility that a defendant has acted unlawfully" is not enough.  *Iqbal*, 556 U.S. at 678.

Nor can Plaintiffs' claim be saved by the R&R's suggestion (at 72) that, "where the facts at issue may be in the control of others, dismissal prior to discovery is not appropriate."  The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  It does not permit plaintiffs to avoid dismissal simply by claiming they need to fish for facts in a defendants' possession to convert implausible suspicions into actionable claims.  *See id*. at 559.

**4.**     Finally, Ohio law bars nuisance actions "where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist."  *Brown v. Scioto Cty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1159 (Ohio Ct. App. 1993).  The R&R declined (at 73) to apply this rule because "[t]he complaint alleges that all Defendants failed to comply with regulations.  But the Complaint's *ipse dixit* allegations on this score fall short.  And the R&R relied (at 73) on the allegation that the *Manufacturers* engaged in "an extensive deceptive marketing scheme" to conclude that some alleged misconduct was unrelated to the Defendants' regulated activities, and therefore amenable to a nuisance challenge.  But Plaintiffs exclude the Pharmacy Defendants from their marketing allegations.  *See* Compl. ¶¶ 174-497, 989.[4]

## IV.    Plaintiffs Fail to State a Claim Under Ohio Rev. Code § 2307.60 (Count 9).

Count 9 asserts a claim under an Ohio statute providing that a plaintiff "injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically

---

[4] The R&R also relied (at 73) on the rejection of a "legislatively authorized conduct" argument in *Beretta*, 768 N.E.2d at 1143.  But all the Ohio Supreme Court said was that "the law d[id] not regulate the distribution practices alleged in the complaint."  *Id*.  Whatever that passing statement meant, it is inapplicable here, because Plaintiffs specifically allege that the Pharmacies' conduct was governed by applicable regulations.  *See also supra* at 3.

excepted by law." Ohio Rev. Code § 2307.60(A)(1). This claim fails not only because Plaintiffs failed to adequately plead proximate causation (as discussed above), but for two further reasons.

    **1.**    Plaintiffs do not allege that any of the Pharmacy Defendants has been convicted of any crime.[5] That omission ends the matter, because claims under § 2307.60 "are not viable in the absence of a criminal conviction." *Jane v. Patterson*, No. 1:16-cv-2195, 2017 WL 1345242, at \*4 (N.D. Ohio Apr. 12, 2017); *see also, e.g.*, *A.A. v. Otesgo Local Sch. Bd. of Educ.*, No. 3:15-cv-1747, 2016 WL 7387261, at \*9 (N.D. Ohio Dec. 21, 2016); *Ortiz v. Kazimer*, No. 1:11-cv-01521, 2015 WL 1400539, at \*12 (N.D. Ohio Mar. 26, 2015), *aff'd sub nom. Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848 (6th Cir. 2016); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 261 (6th Cir. 2014) (holding that a criminal conviction is a condition precedent to liability under an analogous Ohio statute, Ohio Rev. Code § 2921.13).

    Plaintiffs (and the R&R) focus on *Jacobson v. Kaforey*, 75 N.E.3d 203 (Ohio 2016), but *Jacobson* addressed an unrelated issue: whether § 2307.60 creates a cause of action at all. 75 N.E.3d at 205. In holding that it plainly does, the court in *Jacobson* had no occasion to address whether a prior criminal conviction is an element of that cause of action. In fact, the court said that "[a]ny ensuing issues regarding how the statute operates or what a plaintiff must do to prove

---

    [5] Plaintiffs do allege that some (though not all) of the Pharmacy Defendants have been involved in "enforcement actions" brought by various entities outside Ohio. Compl. ¶ 1102. But they do not allege that any of these actions resulted in a court judgment adverse to any Pharmacy Defendant, much less a criminal conviction. And Plaintiffs' references to RICO and the Ohio Corrupt Practices Act are irrelevant to their claim against the Pharmacy Defendants, because Plaintiffs do not allege that the Pharmacy Defendants even violated those laws, much less that they were convicted for doing so. *Id.* ¶¶ 878-973, 1102. Also irrelevant are Plaintiffs' allegations that other entities, unrelated to the Pharmacy Defendants, pleaded guilty to criminal acts. *Id.* ¶ 1102.

    The Supreme Court of Ohio recently agreed to answer this certified question: "Does [R.C.] 2307.60's creation of a civil cause of action for injuries based on a 'criminal act' require an underlying criminal conviction?" *Buddenberg v. Weisdack*, No. 2018-1209 (Ohio Oct. 24, 2018). This Court should dismiss the claim here without awaiting a decision in *Buddenberg*, however, because Ohio law is already clear on this question for the reasons explained in the text.

a claim under R.C. 2307.60(A)(1) are beyond the scope of this appeal." *Id.* at 206.[6]  It remains the case, as courts have held both before and after *Jacobson*, that claims under § 2307.60 "are not viable in the absence of a criminal conviction." *Jane*, 2017 WL 1345242, at *4.

The R&R also cited an outlier decision from this district, stating that a plaintiff may pursue a claim under § 2307.60 "regardless of whether any person has pleaded guilty to or been convicted of a criminal offense."  R&R 89 (quoting *Chemical Bank v. Kausmeyer*, No. 4:15-cv-1850, 2016 WL 7178662, at *7 (N.D. Ohio Dec. 9, 2016)).  But that decision relied entirely on a state-court decision—*Cuyahoga Heights Local School District v. Palazzo*, 69 N.E.3d 162, 166 (Ohio Ct. App. 2016)—involving *a different statute*.  Unlike § 2307.60, that statute expressly provides for liability "whether or not any person has pleaded guilty to or has been convicted of any criminal offense." Ohio Rev. Code § 2307.61(G)(1).  Because Plaintiffs are not pursuing a claim under that provision (which relates to "willful property damage" or a "theft offense"), those cases are irrelevant.[7]

In fact, the statement in § 2307.61(G)(1) that a criminal conviction is not a prerequisite to civil liability for the narrow subset of crimes covered by that provision confirms that the General Assembly took care to specify in such statutes the circumstances in which civil liability does not require a criminal conviction.  *See also* Ohio Rev. Code §§ 2307.60(B)(2)(b), (B)(2)(c), (B)(3) (all

---

[6] For this reason, Plaintiffs' observation that the claim that *Jacobson* allowed to go forward may not have involved a criminal conviction is beside the point; the court only purported to answer the unrelated question that had been certified to it.  *See* 75 N.E.3d at 205.  And while Plaintiffs point to other cases in which there apparently was no preexisting criminal conviction, those decisions likewise did not address the issue and are therefore inapposite here.  *See* Pls.' Br. 93-94. It is axiomatic that "questions which merely lurk in the record are not resolved, and no resolution of them may be inferred."  *United States v. Shabani*, 513 U.S. 10, 16 (1994) (quotation omitted).

[7] Plaintiffs pointed to one other case holding that a criminal conviction is not a prerequisite to recovery under § 2307.60.  Pls.' Br. 94 (citing *Gonzalez v. Spofford*, No. 85231, 2005 WL 1541016, at *4 (Ohio Ct. App. June 30, 2005)).  *Gonzalez* indeed "relied on R.C. 2307.60 for this proposition," but, as *Cuyahoga Heights* explains, "this appears to be a clerical error—the proposition is found in R.C. 2307.61."  69 N.E.3d at 166 n.1.

9

providing that a wrongdoer is barred from recovering as a plaintiff "regardless of whether the [would-be plaintiff] has been convicted of or pleaded guilty to or has been charged with committing the felony" or other wrong); *id*. § 2307.50(C) (creating a civil action "regardless of whether the defendant has been convicted of or pleaded guilty to a child stealing crime).

That the General Assembly included such language in all these provisions but not in § 2307.60(A)(1) makes clear that this district's cases are correct to hold that claims under § 2307.60 are not viable in the absence of a criminal conviction.  Indeed, if a criminal conviction were not a prerequisite, then the language in §§ 2307.50(C) and 2307.61(G)(1) specifically providing that a prior conviction is unnecessary in cases governed by those provisions would be wholly superfluous.  Yet "it is a basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose."  *State ex rel. Cleveland Elec. Illuminating Co. v. City of Euclid*, 159 N.E.2d 756, 759 (Ohio 1959).

**2.**     Plaintiffs' criminal-acts tort claim also fails on the independent ground that Plaintiffs have not alleged any "injur[y]" to their "person or property."  Ohio Rev. Code § 2307.60(A)(1).  They allege only economic loss, primarily in the form of increased social spending.  Under the statute's plain text, however, Plaintiffs cannot recover for these expenditures because they do not constitute an "injur[y]" to either their "person or property."  The R&R rejected this argument on the ground that "the statute itself does not contain such an express limitation," R&R 90, but the textual limitation could hardly be clearer.

## V.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 10).

To state a claim for unjust enrichment under Ohio law, "a plaintiff must allege facts satisfying the following elements: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under

circumstances where it would be unjust to do so without payment.'"  *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 776 (6th Cir. 2014) (quoting *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005)).  Plaintiffs' unjust enrichment claim fails for at least four reasons.

1.      OPLA abrogates it.  *See Leen v. Wright Med. Tech., Inc*., No. 3:15-cv-125, 2015 WL 5545064, at *2 (S.D. Ohio Sept. 18, 2015) (dismissing unjust enrichment claim under Ohio Rev. Code §§ 2307.71-2307.80 after plaintiff did not oppose defendants' abrogation argument).

2.      Even if the claim has not been abrogated, it fails on the first element because Plaintiffs have never conferred any benefit on the Pharmacy Defendants.  Plaintiffs do not allege that *they* purchased opioids from the Pharmacy Defendants or otherwise gave the Pharmacy Defendants money or any other thing of value.  And while Plaintiffs assert that "unjust enrichment arises . . . where the expenditure saves the other from expense or loss,"  Pls.' Br. 96, they point to no expense or loss that the Pharmacy Defendants would have incurred but for Plaintiffs' expenditures.

Instead, the R&R sustained the unjust enrichment claim solely on Plaintiffs' novel and far-reaching theory that a plaintiff confers a benefit on a defendant and may sue for disgorgement whenever the plaintiff spends money to address "negative externalities" allegedly created by the defendant.  R&R 91-95; Pls.' Br. 98 (arguing that Plaintiffs enriched the Pharmacy Defendants by spending money to assist third parties through "increased healthcare services and addiction treatment for opioid users").

This "externalities" theory is incorrect as a matter of Ohio law.  An expenditure made to help third parties who are allegedly harmed by a defendant's "negative externalities" might enrich those third parties in some sense.  But it does not enrich the defendant at all, either by providing it with money or services or by saving it from some expense or loss.  In this case, for example,

11

Plaintiffs could not possibly allege that their social spending conferred benefits on the Pharmacy Defendants, or that the Pharmacy Defendants would themselves have provided increased healthcare services and addiction treatment had Plaintiffs not done so.  The Pharmacy Defendants, like the manufacturers of cold medicine sued in *Ashley County v. Pfizer, Inc.*, "cannot be said to be the beneficiaries of the services provided by the Counties" to third parties.  552 F.3d 659, 666 (8th Cir. 2009); *accord City & Cty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1144-45 (N.D. Cal. 1997).

Any reliance on *White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000), is misplaced.[8]  That opinion's full analysis of the issue consisted of a single sentence: "Plaintiffs allege that they have conferred a benefit upon Defendants, *i.e.*, that the City has paid for what may be called the Defendants' externalities—the costs of the harm caused by Defendants' failure to incorporate safety devices into their handguns and negligent marketing practices." *Id.* at 829.  This view of unjust enrichment is not binding on this court or any other, no Ohio decision has ever adopted it, and it finds no support in Ohio case law.  Indeed, even where a plaintiff's action benefitting a third party also assists the defendant in an indirect but recognizable way, Ohio courts have held that such assistance "is too indirect to constitute a 'benefit conferred' for purposes of a common law claim of unjust enrichment." *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*, No. 16AP-742, 2017 WL 1407304, at *6 (Ohio Ct. App. Apr. 20, 2017) (holding that body shop conferred no benefit on Nationwide when it repaired a Nationwide-insured car, even though "such repairs fulfilled Nationwide's obligation to its insured to restore and insure the vehicle," because the body shop "performed no work for Nationwide" and "conferred a benefit only on its

---

[8] Plaintiffs and the R&R cite a handful of decisions that they say "agree[d]" with *White*, Pls.' Br. 97 & n.68; R&R 93, but those cases were decided in other jurisdictions and did not purport to apply Ohio law.

customer").  And the Eleventh Circuit, after noting that "[t]he Ohio law of unjust enrichment essentially tracks Florida law," refused to follow *White* and criticized it for failing to "cit[e] to a single Ohio state court case in its unjust enrichment analysis."  *City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1288 (11th Cir. 2015), *vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017).  That the 2000 decision in *White* is not good law is all the more clear after the Ohio Supreme Court specifically held in 2005 that a plaintiff claiming unjust enrichment must point to "a benefit conferred by a plaintiff upon a defendant."  *Johnson*, 834 N.E.2d at 799.

Finally, the other cases cited by Plaintiffs and the R&R are inapposite because they dealt with situations in which the defendant *did* receive a concrete financial benefit—for instance, because the defendant discharged wastewater onto the plaintiff's land (saving itself the cost of disposing of the water by legitimate means), or because it had a statutory duty to take the remedial steps that were instead taken by the plaintiff (saving the defendant the cost of taking those steps). *See, e.g.*, *Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*, 91 F. Supp. 3d 940, 984-86 (S.D. Ohio 2015); *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001).

**3.**     The rule in Ohio is that "[t]o show that a plaintiff conferred a benefit upon a defendant, 'an economic transaction must exist between the parties.'"  *Ohio Edison Co. v. Direct Energy Bus., LLC*, No. 5:17-cv-746, 2017 WL 3174347, at *3 (N.D. Ohio July 26, 2017) (quoting *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Sons Enters., Inc.*, 50 N.E.3d 955, 967 (Ohio Ct. App. 2015)); *see also In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009).[9]  The Complaint does not allege any economic transaction between Plaintiffs and the Pharmacy Defendants.

---

[9] Plaintiffs seek to limit *Ohio Edison* to its facts, asserting that "the court was concerned about the inability to match up benefits and losses in a complicated marketplace with multiple actors buying and selling to each other."  Pls.' Br. 98.  But nothing in *Ohio Edison*'s

13

The Ohio Supreme Court in *Johnson* rejected an unjust enrichment claim because "no economic transaction occurred" between the parties.  834 N.E.2d at 799.  The R&R distinguished *Johnson* because "Plaintiffs' theory of recovery is not based on a financial transaction," R&R 92, but that is exactly the point:  Absent a direct transaction, the plaintiff in *Johnson*, like Plaintiffs here, could not show that the defendant "retained any benefit 'to which it is not unjustly entitled,'" 834 N.E.2d at 799.  And the fact that *Johnson* was an indirect purchaser case (R&R 92) is irrelevant, because the state high court addressed the state antitrust claim separately from the common law restitution claim.  *See* 834 N.E.2d at 796, 799.

**4.**     Even assuming that Plaintiffs have satisfied the first element of their unjust enrichment claim, they have failed to adequately allege the second element: the defendant's knowledge of the benefit.  *See Hobart Corp.*, 758 F.3d at 776.  Plaintiffs say that they paid for Defendants' externalities and that Defendants were aware that they were saving costs and expenses.  Pls.' Br. 98.  But even if Defendants were aware that they were not "internaliz[ing] the actual cost of their activities," *id.*, it does not follow that they knew that Plaintiffs were doing so.  Plaintiffs' conclusory statement that they did is exactly the sort of naked assertion that must be disregarded under *Iqbal*.  That the court in *White* treated "[a]n identical allegation … as adequately supporting the unjust enrichment element of knowledge at the pleading stage" (R&R 94) is of no moment.  On top of its other shortcomings, the decision in *White* cannot provide guidance on the application of Rule 12(b)(6) because it used the outmoded "no set of facts" standard.  *See* 97 F. Supp. 2d at 820.  Plaintiffs' allegations are plainly inadequate under *Twombly*.

---

straightforward declaration—"[t]o show that a plaintiff conferred a benefit upon a defendant, 'an economic transaction must exist between the parties'"—limits that bright-line legal rule to a "complicated marketplace," 2017 WL 3174347, at *3.  And even if it did, this case also involves a complicated marketplace.

**VI.     Plaintiffs' Civil Conspiracy Claim Is Especially Deficient as to the Pharmacy Defendants (Count 11).**

The Pharmacy Defendants incorporate the Major Distributors' objections, which explain why Plaintiffs' civil conspiracy claim should be dismissed.  But that claim is even more deficient as to the Pharmacy Defendants.  The Complaint focuses at length on allegations that Defendants conducted the alleged conspiracy through their participation in industry groups called the HDA and the Pain Care Forum (PCF), and the R&R relied on these allegations.  Compl. ¶¶ 531-45; R&R 9-10, 37-38.  In fact, however, Plaintiffs never allege that any of the Pharmacy Defendants (who simply distributed prescription opioids to their own pharmacies) participated in these organizations, much less explain what that alleged participation involved.  *See* Compl. ¶ 534 & n.150 (alleging that "[e]ach of the Marketing Defendants worked together through the PCF" and that the HDA's members include representatives of the Major Distributors); *see also id*. ¶ 535 n.151 (citing the membership lists on the HDA's website, which lists 36 distributor members, including the Major Distributors but *not* the Pharmacy Defendants).

## CONCLUSION

The Pharmacy Defendants respectfully object to the Report and Recommendation of the Magistrate Judge on all counts save for Count 6 and for Count 5 with respect to Plaintiff City of Akron.  The Complaint should be dismissed in its entirety.

Dated:  2 November 2018

Respectfully submitted,


/s/    Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/    Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Indiana, L.L.C. and
CVS Rx Services, Inc.*

16

/s/   Kelly A. Moore (consent)

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc.*

/s/   Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-2804), and that the foregoing brief complies with the 15-page limit imposed by this Court's October 10, 2018 Order, ECF No. 1032.

/s/    Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 2, 2018, this brief was filed electronically on the

master docket for this matter.  This Court has ordered that "[e]lectronic case filing of a

document, other than an initial pleading, in the master docket shall be deemed to constitute

proper service on all parties."  ECF No. 232 at 8 (No. 1:17-MD-2804).

/ s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com