UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) ) ) ) ) | JUDGE POLSTER<br><br>ORDER ON RECONSIDERATION REGARDING SCOPE OF <u>DISCOVERY IN TRACK ONE-B</u> |

On December 10, 2019, the Court entered an Order regarding the scope of discovery in "Track One-1B," which involves claims by Cuyahoga County and Summit County against six Pharmacy Defendants. In pertinent part, the Order stated:

> the Pharmacy Defendants shall produce transactional dispensing data for the entire United States from 1996 forward. As quickly as possible, the Pharmacy Defendants shall first produce Ohio data; then nearby regional data, including West Virginia and Kentucky; and then roll out data for the rest of the country. If it is less expensive or quicker, defendants may simply produce all regional or national data at once.

Docket 2976 at 2.

The Pharmacy Defendants move the Court to reconsider, asking for a much more restricted geographic and temporal scope – that is, limited to Cuyahoga and Summit Counties only, and dating back only three years. Plaintiffs respond there should me no modification. Having considered the parties' arguments, the motion to reconsider is **granted in part**.

\*   \*   \*   \*   \*

The Court first addresses two threshold matters raised by the Pharmacy Defendants: (1) the Court did not sufficiently consider patients' privacy interests inherent in the requested transactional data; and (2) it would be better and easier for both Plaintiffs and Defendants if transactional data is produced via third-party subpoena from the State of Ohio's Automated Rx Reporting System ("OARRS").

Regarding the first matter, the Pharmacy Defendants are simply wrong that the Court did not consider patient privacy interests. The Court has put into place numerous protective orders specifically addressing health information protected under the Health Insurance Portability and Accountability Act ("HIPAA"), such as patient prescriptions. *See* docket no. 2987 at 1-2 (listing all of the Court's Orders touching on this issue). Indeed, it was Defendants who earlier successfully argued these Protective Orders were sufficient when seeking discovery of HIPAA-protected insurance claims information from Plaintiffs during Track One-A. And although the Court has stated it at least implicitly, the Court now makes explicit that any party who produces *or receives* health information protected under HIPAA (including the Pharmacy Defendants' transactional data) is obligated to adhere to the standards set out in 45 C.F.R. §164.306(a).[1]

Regarding the second matter, the Pharmacy Defendants assert that "the data Plaintiffs need already resides in a single place—the OARRS database—and thus could easily be anonymized and produced in a standardized way, [so] there is no reason to impose the time-consuming, costly burden on Pharmacy Defendants to assemble data sets from numerous computer systems." Motion at 3. The Pharmacy Defendants add that the OARRS database will also "provide prescription information

---

[1] This regulation addresses confidentiality and security standards for HIPAA-protected health information. *See also* docket no. 441 at 32-24 (Protective Order referring to other, related federal regulations).

from the large portion of the market not captured by Pharmacy Defendants—the independent pharmacies and other dispensers whom Plaintiffs chose not to sue but which dispensed a significant share of the prescription opioids in Cuyahoga and Summit Counties in the relevant timeframe." *Id.* The Court agrees that third-party discovery of the OARRS database may be helpful and necessary, but it is not sufficient.  The Pharmacy Defendants' own data is the best and most complete source of relevant information, and access to it by both Plaintiffs and Defendants should be reasonably equal.  Moreover, there is at least some suggestion that submission of data by Ohio pharmacies to the OARRS database was not comprehensive until relatively recently.  It must also be noted that the State of Ohio consistently and repeatedly resisted requests by defendants for production of OARRS data during discovery in Track One-A, so timeliness is a serious issue.

In sum, neither Defendants' arguments regarding privacy issues, nor Defendants' suggestion that the requested discovery is available instead from OARRS, persuades the Court to modify its order regarding scope of discovery.

*     *     *     *     *

The Court next turns to the Pharmacy Defendants' substantive arguments that the scope of discovery of their transactional data should be less wide geographically and less deep temporally.

Regarding temporal scope, the Pharmacies argue that the burden of producing data back to 1996 far exceeds the benefits.  Pharmacies assert a more reasonable temporal scope is no more than three years; at most, "[i]f the Court wanted to ensure that dispensing data was congruent with distribution data, the appropriate discovery period would likewise extend from 2006-2014." Motion at 15.  Defendants point out that the DEA produced transaction-level ARCOS data dating back only to 2006, not 1996.  The Court has weighed the burdens and benefits of this discovery and now

3

agrees with the Pharmacies that the burden of producing transactional data older than 2006 becomes excessive.[2] Accordingly, the Court modifies the temporal scope to be from 2006 forward.

Regarding geographic scope, the Court earlier stated the Pharmacies had to produce nationwide transactional dispensing data, but could "roll it out" – first locally, then regionally, then nationally. The Pharmacy Defendants argue the Plaintiffs do not need data outside of Cuyahoga County and Summit County, and the burden of producing data beyond those jurisdictions exceeds any benefit.

The Court concludes as follows. Balancing the burden on the Pharmacy Defendants with the necessities of the Track One-B case and the entire MDL, the Court continues to find it appropriate that the Pharmacy Defendants produce transactional dispensing data for the entire United States – but with the following amendment. As ordered earlier, the Pharmacy Defendants shall first produce data for Cuyahoga County and Summit County; then produce Ohio data; then nearby regional data, including West Virginia and Kentucky; and then roll out data for the rest of the country.[3] The amendment is that the evidence the parties' Track One-B experts may rely upon, or may adduce during the Track One-B trial, will be limited to Ohio data, and the Defendants must (as ordered earlier) produce all Ohio data *as soon as possible*. The Pharmacy Defendants shall continue to roll out national data, which will be available for future trials of MDL cases (whether

---

[2] This temporal scope is the same as the ARCOS data and is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

[3] As stated earlier, "if it is less expensive or quicker, Defendants may simply produce all regional or national data at once."

before this Court, or before transferor courts following remand).[4] This limitation will help ensure the Track One-B trial is not delayed due to the amount of time it will take the Pharmacy Defendants to produce national transactional data.[5]

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** December 27, 2019

---

[4] Defendants cite *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011), for the proposition that discovery should be cabined to address only the jurisdictions of the cases set for trial. In fact, *Korean Air Lines* stands for the opposite proposition, as it observes that an MDL district judge "inherits the entire pretrial jurisdiction [including jurisdiction over discovery] that the transferor district judge would have exercised if the transfer had not occurred." *Id.* (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3866 (3rd ed. 2010). Here, the undersigned has "inherited" discovery jurisdiction from over 2,000 transferred cases from across the country; together, this jurisdiction clearly supports a national geographic scope.

[5] Although transactional data outside of Ohio may be relevant to the Track One-B case, it is less relevant than Ohio data. It is appropriate for the Pharmacy Defendants to produce national discovery, but the Court concludes the Track One-A Plaintiffs will not suffer excessive prejudice by having to rely only on Ohio data.